UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD IRRER, ET AL ,

    Plaintiffs,

v.

MILACRON, INC.,

    Defendant.
                                    /

Case No. 04-72898

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR STRICT LIABILITY AND INTENTIONAL TORT [95]**

This matter comes before the Court on Defendant's motion to dismiss Plaintiffs' claims for strict liability and intentional tort. The Court finds that the facts and legal arguments are adequately presented in the motion and briefs and that the decision process will not be significantly aided by oral argument. Thus, pursuant to E.D. Mich. L. R. 7.1(e)(2), it is hereby ORDERED that the Defendant's motion shall be resolved as submitted.

Defendant's motion to dismiss is GRANTED. In their Response, Plaintiffs withdraw their intentional tort claims. For the reasons stated more fully below, this Court dismisses Plaintiffs' claims for strict liability.

**I.    Background**

Plaintiffs' complaint asserts claims of negligence, strict liability, and intentional tort against the sole Defendant, Milacron, Inc., and alleges the following. Plaintiffs are or were employed by General Motors Corporation ("GM") at its Buick Motor Division in Flint, Michigan. (Compl. ¶ 1.) They claim injuries from their exposure to metal working fluids

manufactured by and distributed to GM by Defendant.

As to their negligence claim, Plaintiffs allege that Defendant manufactured and provided GM with chemical products, including metal working fluids. Defendant also entered into chemical servicing contracts with GM to monitor these chemicals and metal working fluids at its Buick Complex. (*Id.* at ¶¶ 2, 5.) Plaintiffs further allege that (1) metal working fluids are known to cause various physical injuries and illnesses; (2) as part of their job responsibilities, Plaintiffs were routinely exposed to hazardous metal working fluids and their aerosols and mists; (3) Defendant knew that GM routinely used its hazardous metal working fluids at levels above the recommended safe operating concentration; and (4) Defendant knew that the hazardous metal working fluids caused or aggravated respiratory and skin-related problems and did not warn Plaintiffs of the dangers of said exposures. (*Id.* at ¶¶ 6, 8, 9.)

Plaintiffs also allege that Defendant (1) had servicing contracts covering Plant #36 and the Components Plants at the Buick Complex; (2) had its employees working on the plant floor performing chemical management duties of monitoring the use of metal working fluids and making sure they were used safely and in the proper concentration levels as outlined by the chemical management contracts; and (3) breached its nondelegable duties to Plaintiffs, including but not limited to its duty to warn of the hazards of the metal working fluids. (*Id.* at ¶¶ 10-12.)

Plaintiffs allege that Defendant was negligent by failing (1) to make certain that proper guards and ventilation were installed and maintained to prevent short and long term exposure to metal working fluids and their aerosols and mists; (2) to protect Plaintiffs from continuous exposures, excessive use and over exposure to metal working fluids and their

2

aerosols mists; (3) to monitor and control effectively the presence and growth of bacteria, mold and fungus and other biological contaminates in the metal working fluids; (4) to manage and coordinate the dumping, cleaning, and refilling of the areas that supplied the metal working fluids to various machines and areas of the Plant; (5) to warn Plaintiffs of the adverse health effects or hazards associated with chronic use and exposure to metal working fluids particularly in poorly ventilated areas without respirators; (6) to provide metal working fluids that were safe or fit for their reasonably foreseeable uses despite its express or implied warranties and permitting, directing, or allowing dangerous and hazardous metal working fluids to flow, be pumped into, or used in Plaintiffs' work areas; (7) to provide or to warn Plaintiffs of the need for protective equipment; (8) to investigate or monitor whether the metal working fluids it manufactured, distributed, and supplied to GM would be used in a way that would have a dangerous toxic impact on Plaintiffs; (9) to alleviate the dangerous and toxic impact of the metal working fluids on Plaintiffs after having acquired knowledge by providing chemical management services to GM Buick Plants; (10) to hire, train, and supervise properly qualified, competent persons to perform under the chemical management contracts at the GM Buick Plants; (11) to warn Plaintiffs about the hazards of continuous exposure and excessive use and/or over exposure to metal working fluids after having acquired that knowledge; and (12) to perform the duties of the chemical manager in a safe, careful manner with regard to the Plaintiffs' safety.  (*Id.* ¶ 12a-l.)

   As to Plaintiffs' claim of strict liability against Defendant Milacron, the following is alleged.  Defendant, as the manufacturer of certain chemical products and metal working fluids, and as the chemical management servicer to the GM Buick Complex, "was engaged in dangerous and ultrahazardous activities" and that "by engaging in said activities . . . is

strictly liable to Plaintiffs for the breaches of its nondelegable duties described" above. (*Id.* at ¶¶ 15-16.)

## II. Motion to Dismiss Standard

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

## III. Analysis

### A. Product Liability Claims

Plaintiffs' complaint includes allegations that Defendant failed to produce safe chemicals and metal working fluids. These constitute "product liability claims" under Mich. Comp. Laws § 600.2945(h). A product liability action is statutorily defined as "an action based on a legal or equitable theory of liability brought for the . . . injury of a person . . . caused by or resulting from the production of a product." Mich. Comp. Laws § 600.2945(h). "Production" is defined as "manufacture, . . . , formulation, development of standards, preparation, processing, . . ., inspection, testing, . . ., warning, instructing, marketing, selling, advertising, packaging, or labeling." Mich. Comp. Laws § 600.2945(i).

It is well established under Michigan law there is no strict liability for product liability claims. *See Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 181 n.9 (Mich. 1984). *See also Ryan v. Brunswick Corp.*, 557 N.W.2d 541, 545 n.8 (Mich. 1997) (observing that "[p]roduct liability claims in Michigan are based on a single statute, M.C.L. § 600.2946; M.S.A. § 27A.2946, and are fault based."), *abrogated on other grounds*, *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002).

### B. Negligent Performance of Chemical Management Contract

Plaintiffs' complaint also includes allegations that Defendant was negligent in the performance of its duties under its chemical management contracts with GM. Similar to Plaintiffs' product liability claims, these too are fault based and do not state a claim for strict liability. Plaintiffs do not cite any authority to the contrary.

### C. Strict Liability for Ultrahazardous or Abnormally Dangerous Activity

5

Plaintiffs argue that their complaint states a claim for strict liability in tort against Defendant Milacron based on allegations that Defendant engaged in ultrahazardous or abnormally dangerous activity that injured Plaintiffs. This Court disagrees.

Construing the allegations in Plaintiffs' complaint in a light most favorable to them, Plaintiffs allege that Defendant, as the manufacturer of certain chemical products and metal working fluids, failed to warn them of its known dangers. Plaintiffs further allege that, as the chemical management servicer to the GM Buick Complex, Defendant negligently performed its duties under its management contracts and thus "engaged in dangerous and ultrahazardous activities." (*Id.* at ¶¶ 15-16.) Plaintiffs do not allege that manufacturing, providing, or managing the metal working fluids at the GM Buick Complex was in and of itself a dangerous and ultrahazardous activity. Rather, it is alleged that Defendant's conduct made it so. Under a strict liability theory, "conduct which is not inherently dangerous or 'ultrahazardous' does not become so simply because the defendant performed it negligently." *Doe v. Johnson*, 817 F. Supp. 1382, 1399 (W.D. Mich. 1993).

Plaintiffs' reliance on *Williams v. Detroit Edison Company*, 234 N.W.2d 702 (Mich. Ct. App. 1975), is misplaced. The issue presented in *Williams* was "whether the maintenance of an uninsulated 7600-volt power line roughly 28 feet above ground level is an abnormally dangerous activity or thing for which defendant should be absolutely liable when it causes injuries to another person." *Id.* at 708. Despite acknowledging that electricity is a dangerous force, the *Williams* court determined that the power company would be held to "the 'reasonable man' standard of care rather than impose liability based upon the maintenance of an ultra-hazardous activity." *Id.* at 709. It thus held that the district court properly concluded that the plaintiff failed to state a claim under that theory of liability. *Id.*

The discussion in *Williams* that Plaintiffs rely upon concerns strict liability as it applies to injuries resulting from abnormally dangerous activities conducted by a premises owner on his property; i.e., application of "the doctrine of strict liability to 'non-natural' use of one's property." *Id.* Plaintiffs cite no authority supporting their position that Michigan law recognizes a claim for strict tort liability based upon the defendant's use of chemicals at a site not owned by that defendant. Likewise, Plaintiffs cite no authority for their position that Michigan law would recognize a claim for strict tort liability for injuries resulting from the defendant's use of the type of chemicals at issue here at someone else's property, i.e., that the use of such chemicals is, like dynamite blasting, an ultrahazardous or abnormally dangerous activity. Accordingly, Plaintiffs fail to state a claim for strict tort liability under Michigan law for Defendant Milacron's use of chemicals and metal working fluids at GM's Buick Complex under the ultrahazardous activity doctrine, and such claims are dismissed.

### IV. Conclusion

For the above-stated reasons, Defendant's motion to dismiss Plaintiffs' claims for strict liability and intentional tort is GRANTED.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: March 6, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 6, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager