UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD IRRER, ET AL ,

    Plaintiffs,

v.

MILACRON, INC.,

    Defendant.

_____/

Case No. 04-72898

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR NEGLIGENT PERFORMANCE OF CHEMICAL MANAGEMENT [91]**

This matter comes before the Court on Defendant's motion to dismiss Plaintiffs' claims for negligent performance of chemical management by Defendant Milacron. Defendant's motion to dismiss is GRANTED because Plaintiffs do not allege facts showing that Defendant Milacron owed Plaintiffs a duty that was "separate and distinct" from the contractual duties Milacron owed their employer, General Motors, under an agreement to provide GM with chemical management services at the plants in the Buick Complex. *See Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587 (Mich. 2004). *See also Banaszak v. Northwest Airlines, Inc.*, 722 N.W.2d 433 (Mich. 2006).

**I.    Background**

Plaintiffs' complaint asserts claims of negligence, strict liability, and intentional tort against the sole Defendant, Milacron, Inc. This motion concerns only Plaintiffs' negligence claims.

Plaintiffs are current and past employees of General Motors Corporation ("GM") at its

Buick Motor Division in Flint, Michigan. They allege that Defendant Milacron's negligence with regard to their exposure to certain chemicals and metal working fluids ("MWFs") that Milacron manufactured and provided to their employer, GM, caused them to suffer injuries. (Compl. ¶¶ 1, 13.)

Specifically, Plaintiffs allege that, at all times relevant to this litigation, Defendant Milacron manufactured and provided GM with chemical products, including metal working fluids, and entered into chemical servicing contracts with GM to monitor the use of these chemicals and metal working fluids at GM plants in the Buick Complex. (*Id.* at ¶¶ 2, 5.) Plaintiffs further allege that (1) MWFs are known to cause various physical injuries and illnesses; (2) as part of their job responsibilities, Plaintiffs were routinely exposed to hazardous MWFs and their aerosols and mists; (3) Milacron knew that GM routinely used these MWFs at levels above the recommended safe operating concentration; and (4) Milacron knew that these MWFs caused or aggravated respiratory and skin-related problems and did not warn Plaintiffs of the dangers of said exposures. (*Id.* at ¶¶ 6, 8, 9.)

Plaintiffs also allege that Milacron (1) had servicing contracts covering Plant #36 and the Components Plants at GM's Buick Complex at all times relevant hereto; (2) had its employees working on the plant floor performing chemical management duties of monitoring the use of MWFs and making sure they were used safely and in the proper concentration levels as outlined by the chemical management contracts; and (3) breached its nondelegable duties to Plaintiffs, including but not limited to its duty to warn of the hazards of MWFs. (*Id.* at ¶¶ 10-12.)

Plaintiffs allege that Milacron was negligent by failing (1) to make certain that proper guards and ventilation were installed and maintained to prevent short and long term

2

exposure to MWFs and their aerosols and mists; (2) to protect Plaintiffs from continuous exposures, excessive use and over exposure to MWFs and their aerosols mists; (3) to monitor and control effectively the presence and growth of bacteria, mold and fungus and other biological contaminates in the MWFs to which Plaintiffs were exposed; (4) to manage and coordinate the dumping, cleaning, and refilling of the areas that supplied the MWFs to various machines and areas of the Plant; (5) to warn Plaintiffs of the adverse health effects or hazards associated with chronic use of and exposure to MWFs particularly in poorly ventilated areas without respirators; (6) to provide MWFs that were safe or fit for their reasonably foreseeable uses despite its express or implied warranties and permitting, directing, or allowing dangerous and hazardous MWFs to flow, be pumped into, or used in Plaintiffs' work areas; (7) to provide or to warn Plaintiffs of the need for protective equipment; (8) to investigate or monitor whether the MWFs it manufactured, distributed, and supplied to GM would be used in a way that would have a dangerous toxic impact on Plaintiffs; (9) to alleviate the dangerous and toxic impact of the MWFs on Plaintiffs after having acquired knowledge by providing chemical management services to GM Buick Plants; (10) to hire, train, and supervise properly qualified, competent persons to perform under the chemical management contracts at the GM Buick Plants at all times material to this litigation; (11) to warn Plaintiffs about the hazards of continuous exposure and excessive use and/or over exposure to MWFs after having acquired that knowledge; and (12) to perform the duties of the chemical manager in a safe, careful manner with regard to the Plaintiffs' safety.  (*Id.* at ¶¶ 12(a)-(l).)

## II. Motion to Dismiss Standard

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint.  In a light most

favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

### III.  Analysis

Defendant Milacron's motion to dismiss addresses Plaintiffs' negligence claims based on Milacron's alleged failure to perform the chemical management duties owed under its chemical management service contracts with GM. It argues that these negligence claims must be dismissed because Michigan law does not recognize a tort action based solely on the nonperformance of a contractual duty. *See Fultz*, 683 N.W.2d at 591. Plaintiffs respond that their complaint alleges facts showing that Defendant Milacron owed them a duty that is separate and distinct from Milacron's contractual obligations to their employer

4

GM. They further respond that they have alleged facts showing that there was no contractual relationship between Milacron and GM, that Milacron voluntarily (absent a contractual or other duty) acted to provide chemical management services to GM, that Milacron harmed Plaintiffs when it failed to exercise reasonable care in this voluntary management of chemicals and MWFs at the GM plants where Plaintiffs worked, and thus they have stated a claim for "active negligence" under the principles of the Restatement of Torts (2d) § 324A.

Whether Milacron owes a duty to Plaintiffs under the facts alleged presents a question of law for the Court. *Fultz*, 683 N.W.2d at 590. This Court first analyzes Plaintiffs' argument that Milacron owes them a duty that is separate and distinct from its contractual obligations to GM.

### A. Were Duties Owed to Plaintiffs Separate and Distinct from Milacron's Contractual Obligations to General Motors

### 1. Michigan Law

In *Fultz*, the Michigan Supreme Court examined whether the plaintiff, who claimed that the defendant, "by contracting to plow and salt the parking lot, owed a common-law duty to plaintiff to exercise reasonable care in performing its contractual duties." *Fultz*, 683 N.W.2d at 590. It began its analysis by acknowledging that the "Michigan courts have accepted the Restatement of Torts, 2d, § 324A, as an accurate statement of Michigan law and used the principles . . . in analyzing plaintiffs' claims in the past." *Id.* Nonetheless, it cautioned that § 324A "must not be invoked uncritically or without regard to limiting principles" in Michigan law. *Id.* Accordingly, it undertook to "reconcile the principles expressed in § 324A with [Michigan] case law that limits their breadth." *Id.* at 591.

The Michigan Supreme Court observed that, in the past, the courts have distinguished between misfeasance (action) and nonfeasance (inaction), and "have held that a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id.* (citing *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956)). It then rejected that approach because it improperly focused on the breach element of a plaintiff's prima facie case of negligence as opposed to the duty element.

> We believe the "slippery distinction" between misfeasance and nonfeasance of a duty undertaken obscures the proper initial inquiry: Whether a particular defendant owes any duty at all to a particular plaintiff. . . . As there can be no breach of a nonexistent duty, the former misfeasance/nonfeasance inquiry in a negligence case is defective because it improperly focuses on whether a duty was breached instead of whether a duty exists at all.

*Id.* at 592.

The Court then clarified the correct approach for analyzing tort actions, like Plaintiffs' here, that are based on a contract and brought by a plaintiff who is not a party to that contract. "[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on contract will lie." *Id.* The Court further clarified that a duty separate and distinct from contractual duties arises when the defendant creates a new hazard to the plaintiff that did not previously exist. *Id.* at 593.

**2. Application**

Plaintiffs do not allege that they were signatories to the chemical management contracts between Milacron and GM, and they do not claim to be third-party beneficiaries of those contracts. Rather, they allege that, at all times relevant to this litigation, GM and Milacron entered into chemical servicing contracts obligating Milacron to manage and

6

monitor its chemicals and MWFs used at the plants in GM's Buick Complex to make sure that they were used safely and in the proper concentration levels as outlined by the chemical management contracts. (Compl. ¶¶ 2, 5, 10-12.)  They further allege that they were injured because Milacron failed to perform its contractual duty to make sure its chemicals were used safely and in proper concentration levels.

Despite Plaintiffs' claims to the contrary, they fail to allege that Milacron owed them a duty separate and distinct from the contractual obligations Milacron owed to GM.  They argue that Milacron, while performing chemical management services for GM, allowed hazardous mists from the MWFs to permeate the plants where they worked and that they suffered injuries as a result.  This is not a new hazard.  Rather, as Plaintiffs allege, Milacron's contractual duties required it to monitor these chemicals and MWFs so as to assure their proper concentration levels and safe use.  The "monitoring for safe use" duties Milacron assumed under its contract with GM included the duty of making sure that MWF mists were at safe levels.

The same analysis applies to Plaintiffs' allegations that Milacron failed to adequately monitor and control the presence and growth of bacteria, mold, fungus, and other biological contaminants in the MWFs it supplied to and monitored for GM under their chemical management contract.  This is not a new hazard.  Rather, this specific duty is assumed under Milacron's general contractual duty to monitor the MWFs to ensure their safe use. This point is illustrated in *Bertz v. Norfolk S. Ry.*, No. 3:03CV7011, 2005 WL 1566758 (N.D. Ohio July 5, 2005).

In *Bertz*, a landowner had contracted with a security company to guard a railroad crossing on its premises.  The plaintiff, a railroad employee, was injuried when he

7

attempted to cross that railroad crossing and sued the security company for negligence under Michigan law. The court in *Bertz*, applying *Fultz*, held that the plaintiff's negligence claims against the security company were properly dismissed because the plaintiff had not shown that the security company owed him a duty that was separate and distinct from the contractual duties it owed under its contract with the landowner. *Id.* at *2-3. The court also rejected the plaintiff's claim that the security company had created a new hazard, observing that the security company's failure to adequately guard the crossing "was a failure to provide the contracted for duty" to the landowner, "not the creation of a new hazard." *Id.* at * 3.

Similar to the landowner in *Bertz*, GM may have owed a duty to Plaintiffs, its employees, to make sure that Milacron's MWFs were used safely at the GM plants where Plaintiffs worked. Taking Plaintiffs' allegations here as true, GM sought to fulfill that duty by contracting with Defendant Milacron to provide chemical management services, and Plaintiffs were injured when Milacron failed to adequately provide those contracted-for duties. Thus, similar to the plaintiff in *Bertz*, Plaintiffs here do not allege facts showing that Milacron created a new hazard that would give rise to a duty independent of Milacron's contractual obligations to GM.

Despite their claims to the contrary, Plaintiffs allege no facts showing that Defendant Milacron actively engaged in misconduct, thus creating a hazard that did not previously exist. Rather, there are only allegations that Milacron failed to properly fulfill the duties under its chemical management contract with GM. These failures do not create a new hazard that would give rise to an independent duty of care owed to Plaintiffs. *See Wallington v. City of Mason*, Nos. 267919, 269884, 2006 WL 3826761, *5 (Mich. Ct. App.

Dec. 28, 2006) (making similar findings and holding that a general contractor owed no duty to the employee of a subcontractor that was separate and distinct from the duties the general contractor owed the City under a contract to build a water main).

Plaintiffs also argue that Milacron created a new hazard by failing to adequately warn them about the dangers presented by exposure to its MWFs. This argument fails for two reasons. First, to the extent Milacron had a contractual duty to warn GM about these dangers, Plaintiffs cannot allege a duty owed to them that is separate and distinct from that contractual duty. Second, to the extent Milacron owed Plaintiffs a duty to warn because it was a manufacturer/supplier of MWFs to GM, this is a product liability claim and as such is governed by statute. *See* Mich. Comp. Laws §§ 600.2946, 600.2945(h) and (i).

The Court now addresses Plaintiffs' argument that their complaint alleges a claim of negligence under § 324A of the Restatement of Torts (2d) that is independent of any contractual duty owed by Milacron to GM.

### B. Plaintiffs' Restatement of Torts (2d) § 324A Argument

Plaintiffs' second argument attempts to invoke the principles expressed in the Restatement of Torts, 2d, § 324A; i.e., "[i]f one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz*, 683 N.W.2d at 591. Plaintiffs argue that they have alleged facts showing that there was no contractual relationship between Milacron and GM, that Milacron voluntarily provided chemical management services to GM absent a prior obligation to do so, and that Milacron harmed them when it failed to exercise reasonable care in its "voluntary" management of chemicals and metal working fluids at the GM plants where Plaintiffs worked. This argument is spurious.

9

First, there are no such allegations in Plaintiffs' complaint that place Milacron's conduct within the ambit of § 324A of the Restatement. Rather, Plaintiffs' complaint expressly alleges the existence of chemical management contracts. (Compl. at ¶¶ 5, 10, 11, 12(i), 12(j), and 12(l).). Despite Plaintiffs' arguments to the contrary, their complaint alleges only two negligence claims: (1) product liability claims based on Milacron's alleged breach of its duty to warn arising from its manufacture and sale of chemicals and metal working fluids to GM; and (2) negligence claims arising from Milacron's alleged failure to perform the chemical management duties owed under its chemical management service contracts with GM.

Second, Plaintiffs' argument fails to acknowledge that the principles of § 324A must be reconciled with Michigan case law that limits their breadth. *See Fultz*, 683 N.W.2d at 591. Thus, Plaintiffs' reliance on *Clark v. Dalman*, 150 N.W.2d 755, 760 (Mich. 1967), is misplaced. In *Fultz*, the Michigan Supreme Court may not have overruled the premises liability holding of *Clark,* but it did expressly reject the *Clark* Court's observation that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract." *Fultz*, 683 N.W.2d at 591 (quoting *Clark*, 150 N.W.2d at 760). Plaintiffs' reliance on numerous pre-*Fultz* cases is likewise misplaced. *See; e.g., Johnson v. A & M Custom Built Homes of West Bloomfield, LPC*, 683 N.W.2d 229 (Mich. Ct. App. 2004) (where the court applied the now-repudiated active (misfeasance) versus inactive (nonfeasance) distinction and held that a subcontractor at a common work site could be liable if its active negligence harmed the employee of another subcontractor also working at that construction site); and *Bock v. Gen. Motors Corp.*, 637 N.W.2d 825 (Mich. Ct. App.

2001) (where the court addressed (1) whether the plaintiff employees could invoke the intentional tort exception to the exclusivity provision under Michigan's workers' compensation law, and (2) whether questions of fact existed on the issue whether the sophisticated user doctrine applied thus excusing defendant chemical manufacturer from a duty to warn of its products' dangers used at the plaintiffs' GM plant; not the issue presented here).

## IV.  Conclusion

For the above stated reasons, Defendant's motion to dismiss Plaintiffs' claims for negligent performance of chemical management is GRANTED.[1]

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  March 6, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 6, 2007, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager

---

[1] Dismissal of Plaintiffs' negligence claims related to Milacron's performance of services under its chemical management contracts with GM moot the following *Daubert* motions brought by Milacron as to experts offering opinions on Milacron's performance of chemical management activities:  Skells, Wabeke, Rose, and Crandall.